UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BRIAN ANTHONY BROONER, | ) | Case No. 22-43290-169 |
| | ) | |
| Debtor. | ) | Hon. Bonnie L. Clair |
| _____ | ) | |
| | ) | Hearing Date: February 21, 2023 |
| DANIEL J. CASAMATTA, | ) | Hearing Time: 10:00 a.m. |
| Acting United States Trustee, | ) | Location: 111 South 10th Street |
| | ) | Courtroom 7 South |
| Movant | ) | St. Louis, MO 63102 |
| | ) | Objection Deadline: February 14, 2023 |
| v. | ) | |
| | ) | |
| MAXWELL J. GROSWALD and | ) | |
| GROSWALD LAW, LLC, | ) | |
| | ) | |
| Respondents. | ) | |

**UNITED STATES TRUSTEE'S MOTION FOR EXAMINATION OF
THE FEES OF DEBTOR'S ATTORNEY AND FOR IMPOSITION OF A
CIVIL PENALTY PURSUANT TO 11 U.S.C. §§ 329, 526, AND 528, FEDERAL
RULE OF BANKRUPCY ROCEDURE 2017, AND LOCAL RULE 2093(C)(3)**

Daniel J. Casamatta, Acting United States Trustee for Region 13 (the "United States Trustee"),

by his undersigned attorneys, respectfully moves the Court for examination of the fees of Maxwell J.

Groswald and Groswald Law, LLC, the attorney for the debtor in this case, Brian Anthony Brooner

("the Debtor"), and for imposition of a civil penalty pursuant to 11 U.S.C. §§ 329, 526, and 528;

Federal Rule of Bankruptcy Procedure 2017; and Local Rule 2093(C)(3) of the United States

1

Bankruptcy Court for the Eastern District of Missouri ("Motion"). In support of the Motion, the United States Trustee sets forth the following:

## I. JURISDICTION, VENUE, AND STANDING

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The United States Trustee has standing to file this Motion under 11 U.S.C. § 307 and 28 U.S.C. § 586(a). The "United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to § 11121(c) of this title." 11 U.S.C. § 307; *Haden v. Pelofsky*, 212 F.3d 466, 468 n.5 (8th Cir. 2000) ("The UST acts as a 'bankruptcy watch-dog' and is authorized to raise 'any issue in any case or proceeding under (the Bankruptcy Code)'").

## II. MATERIAL FACTS

4. On October 18, 2022, attorney Maxwell J. Groswald of Groswald Law, LLC (collectively, "Mr. Groswald"), filed a voluntary petition on behalf of the Debtor under chapter 7 of the Bankruptcy Code. (Docket No. 1). Along with the Debtor's petition, Mr. Groswald filed an Official Form 121, a creditor matrix, and a certificate of credit counseling. (Docket Nos. 1, 2, 3). Mr. Groswald did not file any other documents at that time.

5. Mr. Groswald filed the Debtor's schedules, statement of financial affairs, statement of intention, verification of creditor matrix, Official Form B22A, and a Disclosure of Compensation of Attorney for Debtor ("Rule 2016(b) Declaration") on October 19, 2022. (Docket Nos. 7 - 12).

6. Paragraph 1 of the Rule 2016(b) Declaration states that, for legal services, Mr. Groswald had "agreed to accept" $1,600, that he had received $0 prior to the petition date, and that the balance due was $1,600.   Doc. 12 at p. 5, ¶ 1.

7. Paragraph 5 of the Rule 2016(b) Declaration states that the $1,600 fee does not include "[r]epresentation of the debtors [sic] in any adversary proceedings and/or appeals." *Id.,* ¶ 5.

8. Paragraph 6 of the Rule 2016(b) Declaration states the following with respect to the options Mr. Groswald provided to the Debtor concerning payment of attorney's fees:

> Counsel offered debtor(s) two options for the payment of counsel's fees: (1) pre-pay the fees in full prior to the Chapter 7 bankruptcy petition being filed, or (2) bifurcate the attorney services into pre- and post-petition work in order to facilitate the debtor(s) obtaining the benefit of being filed right away and making payments post-petition for the post-petition work.  Counsel does not charge a higher fee for the second option. There are a number of reasons for choosing the second option:

> a. Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front.  Counsel will provide all services regardless of post petition payments.

> b. The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;

> c. The option gives debtor(s) an opportunity to begin rebuilding their credit score by creditors not making any negative credit reports of delinquent payments and using new credit and paying it off each month;

> d. Counsel does not use a third party to finance attorney's fees.

> The fee satisfies the reasonability requirement under Section 329 applying the Lodestar analysis. Both options fully [sic] disclosed to the debtor(s) and debtor(s) chose the second option.

> Under the first installment of the bifurcated agreement [sic], Debtor is given three options upon filing of the Voluntary Petition:  1) Retain Groswald Law for the remainder of the bankruptcy; 2) Seek other counsel; [or] 3) proceed pro se with the remainder of the bankruptcy.

Debtor is paying $383.00 to file the initial emergency petition, which is comprised of the $338.00 filing fee, and $45.00 for the credit report. Pursuant to the second installment of the bifurcated agreement [sic], Debtor will pay $1,600 in attorneys fees. Groswald allows Debtor to pay this $1,600 in installments of up to 11 months.

*Id.* ¶ 6.

9.     In addition to listing the services to be provided pursuant to each agreement,

Paragraph 6 includes the following descriptions of the two agreements:

The first, pre-petition fee agreement was signed prior to the filing of the petition for the preparation and filing of the bankruptcy petition, statement about social security number, creditor list and other documents required at the time of filing; and review, analysis and advisement of the typical matters that are required to be performed prior to filing by a bankruptcy attorney under the applicable bankruptcy and ethical rules. Counsel's fees paid under the first fee agreement (if any) are shown in Section 1 above as "Prior to the filing of this statement I have received", and any fees earned but not paid for the pre-petition work were waived by counsel.

The second, post-petition fee agreement was signed after the petition was filed for post-petition work to be performed, including the preparation of schedules of assets and liabilities, and statement of financial affairs; preparation and filing of other required documents; organizing and sending documents to the chapter 7 trustee; representation at the first meeting of creditors; and other services outlined in the fee agreement. Counsel's fees owed by debtor under the second fee agreement for post-petition work are reflected in Section 1 above as the Balance Due. The second fee agreement allows the debtor(s) to pay these post-petition fees and costs in installments over up to 11 months following the bankruptcy filing.

*Id.*

10.     Paragraph 7 of the Rule 2016(b) Declaration states that Mr. Groswald "uses LawPay to provide processing services for post petition payments that are automatically deducted from Debtor's Debit card or Bank account," that he will absorb processing fees, and that he "fully informed debtor(s) and obtained their informed consent to the bifurcation of services, LawPay processing services, and to a limited sharing of information with LawPay." *Id.* ¶ 7.

11. At the request of the United States Trustee, Mr. Groswald sent the United States Trustee the pre-petition agreement, called "Groswald Law Pre-Petition Chapter 7 Emergency Petition Bifurcation Agreement" ("the Pre-Petition Agreement"), and post-petition agreement called "Groswald Law Post-Petition Chapter 7 Bankruptcy Representation Agreement" ("the Post-Petition Agreement") between Mr. Groswald and the Debtor, copies of which are attached to this motion as Exhibits 1 and 2, respectively.

12. The Pre-Petition Agreement and the Post-Petition Agreement each contain multiple pages of single-spaced text.

13. The Pre-Petition Agreement shows that it was signed on October 18, 2022. The Post-Petition Agreement shows that it was signed the following day, October 19, 2022. *Id.*

14. Some relevant provisions of the Pre-Petition Agreement are the following:

• The Pre-Petition Agreement states that the "entire cost" the Debtor agreed to pay Mr. Groswald under that agreement was $383, "comprised of a $45.00 credit report and a $338.00-chapter 7 filing fee." Exhibit 1, p. 1.

• Under the heading "Scope of Agreement," the Pre-Petition Agreement states that Mr. Groswald "provides advice" about the consequences of filing a bankruptcy case under chapter 7 under the Debtor's "particular circumstances" and will file "Clients [sic] Emergency Bankruptcy Petition (i.e. the 'skeletal petition')" which "is comprised solely of Debtors [sic] Voluntary Petition, Creditor Matrix, and Statement of Social Security Number." The Pre-Petition Agreement further states that the "Skeletal Petition provides immediate bankruptcy relief for 14 (fourteen) days" and that Mr. Groswald "agrees to represent [Debtor] SOLELY for this 14-day period." *Id.*

• The Pre-Petition Agreement states that the "detailed additional services" Mr. Groswald agreed to provide pursuant to the agreement are the following:

Selecting the correct chapter of bankruptcy for the debtor, exemption planning, obtaining and reviewing documents (e.g., paystubs, tax returns, bills, other miscellaneous documents), checking casenet (or other online databases) for judgments, doing an intake questionnaire, running a credit report, reviewing the credit report, doing a complete "means test" analysis to confirm that there is not a presumption of abuse, asset verification, verification of previous bankruptcy filings, preparing the voluntary petition, preparing the creditor matrix, and asking [Debtor] about potential transfer issues (i.e. fraudulent transfers). In addition, Groswald agrees to file the skeletal petition which provides immediately [sic] bankruptcy relief for 14 days. Groswald will also file [Debtor's] certificate of credit counseling course completion.

*Id.*

• Under the heading "Expiration of Agreement," the Pre-Petition Agreement states the following:

**Upon expiration of 14 days from the filing of the emergency bankruptcy petition, Client terminates [sic] Groswald from Clients [sic] employ as it relates to Client's chapter 7 bankruptcy filing.**

At the end of this 14-day period, client has **three choices**: 1) Client may proceed with Client's bankruptcy pro-se (i.e., without an attorney); 2) client can retain another attorney or 3) client can retain Groswald law [sic] to represent Client for the remainder of the Chapter 7 bankruptcy by entering Groswald's post-petition agreement. Should client elect option one (proceed pro se) or option two (retain new counsel), Groswald Law will *not* request any additional payment from Client.

*Id.* (emphasis in original).

• Following this text under the heading "Expiration of Agreement," the Pre-Petition Agreement states:

Client understands that if client does not sign Groswald's post-petition agreement, Groswald will file a motion to withdraw of [sic] counsel, which creates a conflict of interest because Client may not want Groswald to withdraw. Groswald is ready to perform all post-petition services so long as Client signs the post-petition agreement. By signing this

document, client has stated that Client does intend to engage Groswald for post-petition services.

*Id.,* pp 1-2.

- The Pre-Petition Agreement also includes the following text under the

heading "Execution of Post-Petition Agreement":

Should Client decide to engage Groswald for post-petition bankruptcy services, Client must execute Groswald's post-Petition agreement **within three days** of the emergency bankruptcy filing.

Client acknowledges that client is aware that Groswald's post-petition agreement costs **$1,600** (one thousand six hundred [sic])[1] which may be paid in monthly installments over a period of no more than eleven months. Under the post-petition agreement, Groswald agrees to represent Client from at least day 15 of the bankruptcy filing until Client obtains Client's chapter 7 bankruptcy discharge (i.e. the "wipe out" of the debts) under 11 U.S.C. § 101 et. seq. . . .

\*  \*  \*

**Client has had an opportunity to review Groswald's post-petition agreement before executing this pre-petition agreement. Client understands that the post-petition agreement [sic] will not be discharged in the Client's bankruptcy proceeding.**

*Id.,* p 2 (emphasis in original).

- The Pre-Petition Agreement includes the following statements under the

heading "Disclosure of Alternative Agreements":

Client has been told by Groswald that instead of entering into a bifurcation agreement, Client can pay $1,983.00 (one thousand nine hundred and eighty-three dollars) in cash up front for Groswald Law's representation for chapter 7 bankruptcy. Should Client pay the up-front price, Groswald would represent Client for the entirety of Client's chapter 7 bankruptcy (i.e. from the date the bankruptcy is file to the date of the discharge). . .

---

[1] Rule 2016(b) disclosure statements that Mr. Groswald filed in other cases during the three months prior to the filing of the Debtor's petition show that Mr. Groswald charged the Debtor hundreds of dollars more than Mr. Groswald charged his chapter 7 bankruptcy clients who paid his attorney's fees in full pre-petition.

*    *    *

Client acknowledges that entering into a pre-petition emergency chapter 7 bifurcation agreement is Client's best financial option because Client cannot afford the upfront fee. Client believes that if Client enters into a post-petition agreement with Groswald, it will not be an undue hardship for Client to pay Groswald $1,600 within at least [sic] 11 months. Client is aware that Groswald does want Client to enter into the post-petition agreement. . . .

*Id.,* p 3.

- The Pre-Petition Agreement includes the following statements under the

heading "Additional Disclosures":

Groswald is ready to perform all post-petition services so long as Client signs the post-petition agreement. By signing this document, client has stated that Client does intend to engage Groswald for post-petition services.

*Id.,* p 4.

15. Some relevant provisions of the Post-Petition Agreement are the following:

- The terms of the Post-Petition Agreement include the following under the

heading "Scope of Agreement":

Groswald will draft and file Client's Schedules (A/B, C, D, E/F, G, H, I, J), Statement of Financial Affairs ("SOFA"), Form 122A (the "means test"), statement of intent, and other miscellaneous legal documents. Groswald will represent Client for reaffirmation agreements, motions to avoid non-PMSI liens in household goods, and motions to avoid judicial liens. Groswald will represent Client at § 341 meeting of creditors. Groswald will speak with the chapter 7 trustee on Client's behalf when necessary as it relates to asset liquidation, trustee turnover demands, and other miscellaneous dealings with the chapter 7 trustee. Groswald will represent Debtor is [sic] it relates to any presumption of abuse allegations (i.e. a "707") from the United States Trustees [sic] office. Groswald will file the financial management certificate.

This agreement does not include adversaries and/or appeals. If any adversary proceedings are filed by the client in the bankruptcy, or any contested matters arise, including representation in any matter attempting to avoid a contested matter, such representation shall require a separate agreement and additional fees or counsel may withdraw from the case if client did not accurately disclose the matters leading to the adversary. . . .

8

If an adversary proceeding or contested matter is filed or threatened in the bankruptcy court against the client, or if the client wishes this firm to file an adversary proceeding against someone else, then an additional retainer and/or contract will be required for the law firm's representation in this matter, or counsel may decline representation in the adversary proceeding.

If the client has some other litigation in the bankruptcy other than the bankruptcy case itself, then we would charge an hourly rate to represent the client in that litigation. Any litigation over the value of the client's property or right to exempt the property would be included as matters requiring an additional retainer. The client agrees to an hourly rate of $250.00 per hour for Maxwell Groswald. If the total due from the hourly rate exceeds the amount of the initial fee, the client shall remain liable for the excess, and the law firm may discontinue representation if the excess is not paid.

Exhibit 2, pp. 1-2.

• The terms of the Post-Petition Agreement include the following language under the

heading "Additional Disclosures":

Client understands that Client has an obligation to honor this agreement, and that this agreement cannot be discharged in Client's chapter 7 bankruptcy. If Client defaults on this agreement, Groswald **reserves the right to file a lawsuit to collect** the remaining balance owed. Client consents to venue and personal jurisdiction in St. Louis County, Missouri. Should formal judicial proceedings be filed to collect, Client consents to Groswald also collecting reasonably [sic] attorney fees for any collection efforts, along with court costs and fees.

Exhibit 2, p. 2 (emphasis in original).

16. Despite the potentially serious consequence to the Debtor in the event of a default,

the Pre-Petition Agreement and Post-Petition Agreement are unclear as to the Debtor's payment

obligations. Specifically, although the Pre-Petition Agreement mentions that the $1,600 in attorney's

fees the Debtor would be required to pay to receive post-petition services from Mr. Groswald "may

be paid in monthly installments over a period of no more than eleven months" (Ex. 1, p. 1) and the

Post-Petition Agreement states that the Debtor agrees to pay $1,600 "over a period of no more than

11 months from the date this agreement is signed (Ex. 2, p. 1), neither contains a date by which the

9

fee must be paid in full. Unlike the Rule 2016(b) Declaration, the Post-Petition Agreement makes no mention of automatic monthly debits from the Debtor's bank account or debit card.

17. Neither the Pre-Petition Agreement nor the Post-Petition Agreement bears a signature of Mr. Groswald or another representative of Groswald Law.

18. During the Section 341 meeting of creditors in the Debtor's case, the Debtor testified that he did not have $1,983 to pay the fees of Mr. Groswald, the court filing fee, and the credit report fee upfront before his bankruptcy case was initiated.

## III. ARGUMENT

19. The United States Trustee asks the Court to cancel the Pre-Petition Agreement and the Post-Petition Agreement between the Debtor and Mr. Groswald because (a) the agreements unbundle the services Mr. Groswald is to provide to the Debtor, in violation of Local Rule 2093(C)(3) of the United States Bankruptcy Court for the Eastern District of Missouri ("Local Rule 2093(C)(3)");[2]

---

[2] Local Rule 2093(C)(3) reads as follows:

Legal Services of Debtor's Counsel. Regardless of which chapter of the Bankruptcy Code the case is under, debtor's counsel shall provide all legal services necessary for representation of the debtor in connection with the bankruptcy case until conclusion of the case, except for, at the discretion of debtor's counsel, representation of the debtor in an adversary proceeding and/or an appeal, for the fee set forth in the attorney fee disclosure statement filed with the Court pursuant to L.R. 2016-1(A). *"Unbundling" of legal services or any similar arrangement is prohibited, and debtor's counsel shall not include any language in the attorney fee disclosure statement or in a client agreement that contradicts or is inconsistent with this Rule.* Debtor's counsel may, subject to any applicable Bankruptcy Code sections and rules governing compensation of professionals, be additionally compensated for representation of the debtor in an adversary proceeding and/or an appeal. This is regardless of the fee option selected in a Chapter 13 case.

L.R. 2093(C)(3) (emphasis added).

Local Rule 2016-1(A) requires an attorney representing a debtor "in a case under any chapter *shall file with the petition* a statement disclosing compensation paid or agreed to be paid to such attorney for services in contemplation of or in connection with the case." L.R. 2016-1(A)(emphasis added). Despite this requirement, Mr. Groswald did not file a Rule 2016(b) Declaration when he filed the Debtor's petition. Instead, Mr. Groswald first filed a Rule 2016(b) Declaration on October 19, 2022, after the Debtor had entered the Post-Petition Agreement. Had Mr. Groswald complied with Local Rule 2016-1(A), the terms of the Pre-Petition Agreement indicate that his Rule 2016(b) Declaration would have listed $0 as the amount fees he had "agreed to accept." *See* Ex. 1.

(b) examination of the agreements pursuant to Section 329 of the Bankruptcy Code and Rule 2017 of the Federal Rules of Bankruptcy Procedure reveals that the $1,600 in attorney's fees the Debtor is to pay exceeds the reasonable value of the services to be rendered under those agreements; (c) the terms of the agreements are not clear and conspicuous, as required by Section 528(a)(1) of the Bankruptcy Code; and (d) the agreements misrepresent the services that Mr. Groswald is to provide for the Debtor, in violation of Section 526(a)(3) of the Bankruptcy Code.

### A. Mr. Groswald Violated Local Rule 2093(C)(3).

20.     Under Local Rule 2093(C)(3), attorneys for debtors must, with limited exceptions, provide full scope representation, the "traditional arrangement between a lawyer and client whereby the lawyer provides legal services for all aspects of a matter from beginning to end." Black's Law Dictionary (11th ed. 2019); L.R. 2093(C)(3). In addition to requiring full-scope representation, the language of Local Rule 2093(C)(3) explicitly prohibits the unbundling of legal services "or any similar arrangement" as well as the inclusion of any terms in fee disclosures or client agreements that contradict or are inconsistent with Local Rule 2093. L.R. 2093(C)(3).

21.     Black's Law Dictionary explains that unbundling is akin to limited scope representation, which in turn is defined as an attorney's provision of "discrete, selected services for a client who does not want the attorney's services for all aspects of a matter." (Black's Law Dictionary 2019).

22.     The text of Local Rule 2093(C)(3) plainly forbids unbundling and requires than an attorney for a debtor provide "*all* legal services necessary for representation of the debtor in connection with the bankruptcy case until conclusion of the case," except for representation of the debtor in an adversary proceeding and/or an appeal, "for the fee set forth in the attorney fee disclosure

statement filed with the Court pursuant to L.R. 2016-1(A)." L.R. 2093(C)(3) (emphasis added). Thus, irrespective of whether a bankruptcy debtor hires an attorney for a limited scope of services, Local Rule 2093(C)(3) requires the attorney to provide the debtor with all necessary legal services until the conclusion of the debtor's bankruptcy case.

23.     It is also significant that Local Rule 2093(C)(3) forbids not only the unbundling of legal services by debtors' attorneys, but also "any similar arrangement." *Id.* By disallowing "any similar arrangement" to unbundling, Local Rule 2093(C)(3) proscribes agreements or provisions that may not fall neatly within the definition of "unbundling." The effect of this language in Local Rule 2093(C)(3) is to forbid any arrangements by a debtor's attorney that restrict the scope of the services the attorney for the debtor is to provide.

24.     Local Rule 2093(C)(3) also categorically bars a debtor's attorney from including in an attorney fee disclosure statement or a client agreement "any language" that either contradicts "or is inconsistent with" the Local Rule. *Id.* This wording indicates that that Local Rule 2093(C)(3) covers not only fee disclosure statements or client agreements containing terms that specifically provide for unbundling, but also fee disclosure statements or client agreements containing terms that conflict in any manner with Local Rule 20093(C)(3)'s requirement that a debtor's attorney provide full-scope representation.

25.     Here, the fee arrangement and agreements between the Debtor and Mr. Groswald directly conflict with the requirements of Local Rule 2093(C)(3). Mr. Groswald agreed to provide separate, distinct menus of services under the Pre-Petition Agreement and the Post-Petition Agreement, which violates both the requirement in Local Rule 2093(C)(3) that a debtor's attorney perform "all legal services necessary for representation of the debtor in connection with the

bankruptcy case until conclusion of the case" for the fee set forth in the attorney disclosure statement and Local Rule 2093(C)(3)'s prohibition on unbundling or "any similar arrangement."

26.     The Pre-Petition Agreement explicitly and emphatically limits the services Mr. Groswald agreed to provide to the Debtor under that agreement. The Pre-Petition Agreement states that the "Emergency Bankruptcy Petition" Mr. Groswald agreed to file for the Debtor would consist "solely of Debtors [sic] Voluntary Petition, Creditor Matrix, and Statement of Social Security Number." Exhibit 1, p. 1.

27.     The terms of Pre-Petition Agreement stress that the "Emergency Bankruptcy Petition" would provide the Debtor with "immediate bankruptcy relief" for a period of 14 days and that Mr. Groswald agreed to represent the Debtor "SOLELY for this 14-day period." *Id.* The Pre-Petition Agreement stipulates that Mr. Groswald would not represent the Debtor beyond that 14-day period unless the Debtor signed the Post-Petition Agreement. *See id.*, pp. 1-4.

28.     There are repeated statements in the Pre-Petition Agreement that Mr. Groswald would file a motion to withdraw as Debtor's counsel if the Debtor did not sign the Post-Petition Agreement. *Id.* The Pre-Petition Agreement further provides that Mr. Groswald "is ready to perform all post-petition services *so long as Client signs the post-petition agreement.*" *Id.*, pp. 1-2, 4 (emphasis added). Thus, Mr. Groswald conditioned his commitment to furnish services such as preparing and filing the Debtor's schedules, statement of financial affairs, and Official Form 122A; representing the Debtor at the Section 341 meeting of creditors; and communicating with the chapter 7 trustee on the Debtor's behalf on the Debtor's execution of the Post-Petition Agreement and commitment to pay $1,600 in post-petition, non-dischargeable attorney's fees. In doing so, Mr. Groswald violated Local Rule 2093(C)(3).

29.     Although the Pre-Petition Agreement provides that the Debtor "terminates [Mr.] Groswald" at the end of the 14-day period post-petition, *id.* at p. 1, this language does not eliminate or avoid the Local Rule 2093(C)(3) violation.  The Debtor was certainly free to discharge Mr. Groswald as his bankruptcy attorney (although there is no indication that the Debtor ever desired to do so, as evidenced by the fact that he signed the Post-Petition Agreement the day after he signed the Pre-Petition Agreement).[3]  Mr. Groswald's responsibilities under Local Rule 2093(C)(3) are separate and independent of the Debtor's actions.  Even if the Debtor had wanted to dismiss Mr. Groswald 14 days post-petition, this would not have relieved Mr. Groswald of his obligation to comply with Local Rule 2093(C)(3), which is part of the Court's Local Rule dealing with the "Professional Conduct and Obligations of Attorneys" who practice before this Court. L.R. 2093.  As explained above, Local Rule 2093(C)(3) bars the inclusion of language providing for the "unbundling" of legal services "or any similar arrangement" in agreements between debtors and their attorneys. The Pre-Petition Agreement and Post-Petition Agreement contain such language.  By entering those agreements with the Debtor, Mr. Groswald violated his duty under Local Rule 2093(C)(3).

**B.     Mr. Groswald's Fees Exceed the Reasonable Value of the Services Provided.**

30.     Section 329 of the Bankruptcy Code, 11 U.S.C. § 329, provides a separate basis for examining the agreements between the Debtor and Mr. Groswald and the fees the Debtor is to pay pursuant to those agreements.  Section 329 of the Bankruptcy Code allows the Court to examine compensation agreements between debtors and their attorneys and, to the extent the fees paid exceed

---

[3]  Indeed, the language of the Pre-Petition Agreement specifically states that by signing it, the Debtor has expressed that he "does intend to engage Groswald for post-petition services."  Exhibit 1, p. 2. The Debtor also testified at the Section 341 meeting that at the time he entered the Pre-Petition Agreement, he intended to hire Mr. Groswald to represent him for the remainder of the Debtor's bankruptcy case.

the reasonable value of the services rendered, the Court can cancel the agreements and order the return of any excessive payment. *See* 11 U.S.C. § 329(a), (b).

31.     The Eighth Circuit has held that "[t]he bankruptcy court has the broad power and discretion to award or deny attorney fees, and indeed, a duty to examine them for reasonableness." *In re Clark*, 223 F.3d 859, 863 (8th Cir. 2000). To make this determination, the Court should compare the amount of compensation to the reasonable value of the services rendered. *In re Zepecki*, 258 B.R. 719, 725 (B.A.P. 8th Cir. 2001). "The test under § 329 measures *reasonable value of the services* provided by the attorney. To the extent that the fees due or paid are not reasonable considering the services provided, the court may cancel the fee agreement or order disgorgement." *In re Redding*, 247 B.R. 474, 478 (B.A.P. 8th Cir. 2000) (emphasis in original).

32.     Section 329(b) places the burden on the Debtor's attorney to establish the reasonableness of his compensation. *In re Mahendra*, 131 F.3d 750, 757 (8th Cir. 1997); *Ridings v. Casamatta (In re Allen)*, 628 B.R. 641, 644 (B.A.P. 8th Cir. 2021).

33.     "[T]he procedural mechanism for the application of [Section 329] is Fed. R. Bankr. P. 2017," which "allows the court, after notice and a hearing, to determine whether payments made to an attorney either before or after the filing of a petition are excessive." *Ridings*, 628 B.R. at 644-45. Under Rule 2017(b), the Court, after notice and a hearing, may determine whether the Debtor's payment or transfer of property, or any agreement for such payment or transfer, after the entry of an order for relief in the case is excessive. Fed. R. Bankr. P. 2017(b).

34.     Rule 2017 directs the Court to review "all bankruptcy-related fees, whether generated pre- or post-petition, whether the payment or transfer is made directly or indirectly, to determine whether those fees are excessive." *In re Brown*, 371 B.R. 486, 497 (Bankr. N.D. Okla. 2007).

35.     Examination of Mr. Groswald's fees in this case reveals that they exceed the reasonable value of the services provided.  The Pre-Petition Agreement shows that if the Debtor had paid Mr. Groswald's attorney's fees in full pre-petition, the Debtor would have paid a total of $1,983 ($1,600 attorney's fee + $338 filing fee + $45 credit report fee).  Exhibit 1, p. 3.  In return for the $1,983, Mr. Groswald would have provided both pre-petition services, including due diligence and the preparation and filing of the Debtor's petition, creditor matrix, and certificate of credit counseling; and post-petition services.  *Id.*  Under the terms of the Pre-Petition Agreement and the Post-Petition Agreement, the Debtor is to pay a total of $1,983 ($383 under the Pre-Petition Agreement + $1,600 in attorney's fees under the Post-Petition Agreement).  In other words, Mr. Groswald charged the Debtor the same fee solely for the post-petition services as Mr. Groswald would have charged the Debtor for both pre-petition and post-petition services had the Debtor paid Mr. Groswald's fees in full before his case was filed.  A fair allocation of the fees would mean that Mr. Groswald would have charged the Debtor substantially less than $1,600 for the post-petition services. Mr. Groswald's designation of the $1,600 in attorney's fees as "post-petition" was just a veiled attempt to render them non-dischargeable and to collect all of the fees post-petition.  *In re Kolle*, 641 B.R. 621, 677 (Bankr. W.D. Mo. 2021)(noting that, if the debtor's attorney had truly waived his fees for services provided pre-petition, the total fee for a chapter 7 case should be lower than the full fee charged to clients who pay in full upfront and that the practice of treating all fees as post-petition "has the appearance of being a sham" designed to allow the attorney to treat pre-petition, dischargeable fees as post-petition).

36.     Considering that the $1,600 in fees Mr. Groswald charged the Debtor under the Post-Petition Agreement exceeds the reasonable value of the services provided under that agreement, the United States Trustee asks the Court to examine the Pre-Filing Agreement and the Post-Filing

Agreement between the Debtor and Mr. Groswald pursuant to Section 329 and Rule 2017, cancel the Post-Filing Agreement, and order the refund of all fees the Debtor paid to Mr. Groswald post-petition.

### C. Mr. Groswald Violated Sections 528(a)(1) and 528(a)(2).

37.     The Bankruptcy Code includes various requirements and limits on debt relief agencies. *See, e.g.,* 11 U.S.C. §§ 526 - 528. Attorneys for bankruptcy debtors are debt relief agencies within the meaning of Section 101(12A) and are therefore subject to the requirements and limits on debt relief agencies included in the Bankruptcy Code. *Milavetz, Gallop & Milavetz, P.A. v. U.S.,* 559 U.S. 229-236-39 (2010).

38.     Although Mr. Groswald must comply with the provisions of Sections 526 through 528, he did not do so in this case. Section 528(a)(1) requires that debt relief agencies enter written contracts with clients that "clearly and conspicuously" explain the services the agency will provide, the fees or charges for those services, and the terms of payment. 11 U.S.C. § 528(a)(1); *In re Milner,* 612 B.R. 415, 442 (Bankr. W.D. Okla. 2019)("'Clear and conspicuous' provisions regarding services and fees are the key components of compliance with Section 528(a).").

39.     Whether a statutorily required disclosure in an agreement is clear and conspicuous is typically a question of law, requiring a court to apply an objective standard of review to determine if the disclosure is adequate. *Rand Corp. v. Yer Song Moua,* 559 F.3d 842, 845-46 (8th Cir. 2009) (concluding that as a matter of law, disclosures made to consumer were contradictory and thus violated the Truth in Lending Act). Both the Truth in Lending Act ("TILA") and Section 528(a)(1) of the Bankruptcy Code require that certain information be "clearly and conspicuously" disclosed to consumer debtors. *See* 15 U.S.C. § 1635(a) (requiring a creditor to "clearly and conspicuously disclose" the rights of obligors under covered transactions to those obligors). Also, both the TILA and Section

528(a)(1) are aimed at protecting consumers. *Mourning v. Family Pub. Service, Inc.,* 411 U.S. 356, 363 (1973) (noting that TILA was designed to protect consumers); *Rand Corp.,* 559 F.3d at 845 (same). Given the nearly identical language and similar objectives of the TILA and Section 528(a)(1), the interpretation of the statutes should be the same.

40.     An objective review of the Pre-Petition Agreement and Post-Petition Agreement the Debtor signed reveals that they fall far short of the Sections 528(a) standard.

41.     First, the Post-Petition Agreement lacks details about the terms of payments to be made under that agreement. The Post-Petition Statements says nothing about the fact that LawPay will be used to make automatic monthly debits from the Debtor's bank account or debit card, when the debits will commence or end, or the amount of each monthly debit. Mr. Groswald's exclusion of this critical information from the Post-Petition Agreement demonstrates a violation of Section 528(a)(1).

42.     Second, the terms of the Pre-Petition Agreement and Post-Petition Agreement do not clearly explain the services provided and the fees associated with those services, as required by Section 528(a)(1). The Post-Petition Agreement states that the $1,600 fee prescribed in that agreement "does not include adversaries [sic] and appeals" and that if "any adversary proceedings are filed by the client, or against the client in bankruptcy," or if "any contested matters arise, including representation in any matter attempting to avoid a contested matter," representation by Mr. Groswald for such proceedings "shall require a separate agreement and additional fees." Yet, neither the Pre-Petition Agreement nor the Post-Petition Agreement explains what an "adversary" or "contested matter" means. A layperson is unlikely to understand these terms. *In re Seare*, 493 B.R. 158, 215 (Bankr. D. Nev. 2013) (although the retainer agreement used by attorney for chapter 7 bankruptcy debtors stated that representation

in nondischargeability actions and adversary proceedings would require payment of additional fees, attorney violated § 528(a)(1) by failing to explain in the agreement what a nondischargeability action or an adversary proceeding is), *aff'd In re Seare*, 515 B.R. 599, 614 (B.A.P. 9th Cir. 2014). Because the Pre-Petition Agreement and Post-Petition Agreement fail to define these terms, the agreements are unclear as to which services are included or excluded from their scope.

43. Third, even if no definition of the term "contested matter" is required, the Post-Petition Agreement's description of legal services that would require the payment of an additional fee falls far short of the clarity that Section 528(a)(1) requires. In particular, the language in the Post-Petition Agreement stating that the Debtor would have to enter an additional agreement and pay additional fees if "any contested matters arise, including representation in any matter attempting to avoid a contested matter" (Exhibit 2 at p. 1) is incomprehensible.

44. Fourth, neither the Pre-Petition Agreement nor the Post-Petition Agreement relates the likelihood of an adversary proceeding or other contested matter to the particular facts of the Debtor's case, making it unclear how likely the Debtor was to incur additional fees for legal representation in connection with such proceedings. This deficiency further demonstrates that Mr. Groswald violated Section 528(a)(1). *Seare*, 493 B.R. at 216.

45. Furthermore, because Mr. Groswald did not sign the Pre-Petition Agreement or the Post-Petition Agreement, he could not have provided the Debtor with a "fully executed" copy of the agreements, as mandated by Section 528(a)(2). This deficiency provides an additional basis for finding that he violated Section 528(a). *Id.* at 215 (attorney for chapter 7 bankruptcy debtor violated Section 528(a)(2) by not providing a fully executed contract to the debtor; attorney did not sign the retainer

agreement with the debtor); *In re Rodriguez Perez*, No. 15-06593, 2018 WL 3655656 at *7 (Bankr. D.P.R.,

July 31, 2018) ("A fully executed and completed contract must be signed by all the parties").

### D. Mr. Groswald Violated Section 526(a)(3) by Misrepresenting the Services to be Provided

46.     The language of the Pre-Petition Agreement violates Section 526(a)(3)(A) of the

Bankruptcy Code, which states that a debt relief agency may not "misrepresent to any assisted person

or prospective assisted person, directly or indirectly, affirmatively or by material omission . . . the

services that such agency will provide to such person." 11 U.S.C. § 526(a)(3)(A).

47.     The Pre-Petition Agreement states that Mr. Groswald would provide to the Debtor

only the services listed on the first page under the heading "Scope of Agreement." *See* Ex. 1 at p. 1.

According to the Pre-Petition Agreement, Mr. Groswald would render post-petition services only if

the Debtor signed a Post-Petition Agreement. *Id.* at pp. 1, 2, 4. The Pre-Petition Agreement explains

"that if [the Debtor] wishes to obtain the assistance of counsel for the remainder of [his] bankruptcy

proceeding, it is an **extremely time sensitive matter**," and the Debtor "should **not wait until the**

**last day to seek counsel**." *Id.*  at p. 2 (emphasis in original). If the Debtor wanted to retain Mr.

Groswald "for post-petition bankruptcy services," the Pre-Petition Agreement required the Debtor

to execute Mr. Groswald's Post-Petition Agreement **"within three days"** of the petition date. *Id.* The

Pre-Petition Agreement further states that the Debtor was "aware" that Mr. Groswald's "post-petition

agreement costs $1600.00." *Id.* These provisions of the Pre-Petition Agreement make clear that the

Debtor's execution of the post-filing agreement and agreement to pay $1,600 in attorney's fees were

prerequisites to his receipt of post-petition services from Mr. Groswald.

48.    Mr. Groswald violated Section 526(a)(3) of the Bankruptcy Code by including language in the Pre-Petition Agreement that purported to limit the services he would provide to the Debtor, because Mr. Groswald had a legal duty to provide all legal services to the Debtor regardless of whether the Debtor signed the Post-Petition Agreement or paid legal fees.  11 U.S.C. § 526(c); L.R. 2093(C)(3). *See also In re Baldwin,* 640 B.R. 104, 114 (Bankr. W.D. Ky. 2021) ("once [an attorney] files a Chapter 7 petition for a debtor, he is duty bound to complete the debtor's schedules and statement of financial affairs, attend the Section 341 meeting, and negotiate and attend any hearings on reaffirmation agreements"); *In re Collmar*, 417 B.R. 920, 921 (Bankr. N.D. Ind. 2009) ("Many [court] decisions emphasize that when an attorney undertakes the representation of a bankruptcy debtor," the attorney is "agreeing to do so for the entire case and not simply for various bits and pieces of it.")(collecting cases)); *In re Mindardi,* 399 B.R. 841, 850 (Bankr. N.D. Okla. 2009) ("Attorneys representing individual debtors in consumer cases filed under Chapter 7 of the Bankruptcy Code have certain essential duties they must perform."  These duties include helping debtors "file the . . . petition, schedules, statement, and pleadings," attending "the scheduled meeting of creditors," and "advis[ing] and assist[ing] their clients in complying with" Section 521 of the Bankruptcy Code.). By improperly conditioning the Debtor's receipt of post-petition services from Mr. Groswald on the Debtor's signing the Post-Petition Agreement and agreeing to pay $1600.00 in non-dischargeable post-petition fees, Mr. Groswald violated Section 526(a)(3).

49.    The Debtor's case is one of at least seven recent chapter 7 cases in which Mr. Groswald used the same form pre-filing agreement and post-filing agreement.[4]  Mr. Groswald's use

---

[4] In addition to the Debtor's case, Mr. Groswald has used the same form of Pre-Petition and Post-Petition Agreements in the following cases:  *In re Robert Delaine Howard,* case number 22-43540; *In re Christine Marie Elder,* case

of these agreements constitutes a clear and consistent pattern or practice of violating Section 526(a)(3). Pursuant to Section 526(c)(5) of the Code, the Court may enjoin Mr. Groswald's violations of Section 526(a)(3) or impose an appropriate civil penalty for such violations. 11 U.S.C. § 526(c)(5). The United States Trustee urges the Court to impose an appropriate civil penalty to address the violations.

## IV. CONCLUSION

For the reasons set forth above, the United States Trustee respectfully requests that this Court:

a. Find that the Pre-Petition Agreement and the Post-Petition Agreement between the Debtor and Mr. Groswald violate Local Rule 2093(C)(3) and order appropriate relief;

b. Examine, pursuant to 11 U.S.C. § 329(b) and Rule 2017, the Pre-Petition Agreement and the Post-Petition Agreement and the fees the Debtor paid, either directly or indirectly, to the Mr. Groswald and order the return of any excessive fees to the Debtor;

c. Find that the Pre-Petition Agreement and the Post- Petition Agreement between the Debtor and Mr. Groswald violate Section 528(a)(1) and 528(a)(2) of the Bankruptcy Code and cancel the agreements pursuant to Section 526(c)(1);

d. Find that the Pre-Petition Agreement and the Post-Petition Agreement between the Debtor and Mr. Groswald violate Section 526(a)(3) of the Bankruptcy Code and cancel the agreements pursuant to Section 526(c)(1);

number 22-43137; *In re Danielle Elaine Woodard*, case number 22-43166; *In re Kiona Marie Browner*, case number 22-43167; *In re James Carleton Jackson*, case number 22-43468; and *In re Terrence Eliot Hughes and Teauana Marie Hughes*, case number 22-43539.

22

e.  Find that the pre-filing agreement and the post-filing agreement between the Debtor and Mr. Groswald are part of a clear and consistent pattern and practice of violations of Section 526, and impose an appropriate civil sanction; and

f.  Grant such further relief as this Court deems just and equitable.


Dated:  January 30, 2023                    Respectfully submitted,

                                            DANIEL J. CASAMATTA
                                            Acting United States Trustee

                                            PAUL A. RANDOLPH
                                            Assistant United States Trustee

                              By:    /s/ Carole J. Ryczek
                                            Carole J. Ryczek
                                            Trial Attorney
                                            Office of the United States Trustee
                                            Bar No. 6195873IL
                                            111 South 10th Street – Suite 6.353
                                            St. Louis, Missouri 63102
                                            Telephone: 314.539.2982
                                            Fax:  314.539.2990
                                            carole.ryczek@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, a true and correct copy of the above and foregoing motion was filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri and that a true and correct copy of the motion was served electronically via the CM\ECF system of the Clerk of the United States Bankruptcy Court, Eastern District of Missouri upon those parties entitled to receive electronic notice.

I hereby further certify that on January 30, 2023, a true and correct copy of the above and foregoing motion was filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Missouri and that a true and correct copy of the motion was served upon the parties listed below by First-Class United States mail, postage prepaid, at the following addresses:

E. Rebecca Case
Stone, Leyton & Gershman
7733 Forsyth Boulevard
Suite 500
St. Louis, MO 63105
CHAPTER 7 PANEL TRUSTEE

Maxwell Joseph Groswald
Groswald Law, LLC
P.O. Box 179343
St. Louis, MO 63117
COUNSEL FOR DEBTOR

Brian Anthony Brooner
5217 Salinas Valley Drive
Apartment M
St. Louis, MO 63128
DEBTOR

/s/ *Carole J. Ryczek*
Carole J. Ryczek
Trial Attorney
Office of the United States Trustee